IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONTE TATE,<br>　　　　Plaintiff,<br>　　v.<br><br>WEST NORRITON TOWNSHIP, et al.,<br>　　　　Defendants. | :<br>:<br>:<br>:　CIVIL NO. 06-CV-4068<br>:<br>:<br>: |

## MEMORANDUM OPINION & ORDER

March 31, 2008

Rufe, J.

Plaintiff Donte Tate ("Plaintiff" or "Tate") brings this action against Defendants West Norriton Township ("Township") and Patrolman W. J. Delaney ("Patrolman Delaney") (Defendants collectively, "Defendants"), alleging that they violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as certain state laws, during his arrest in September 2004. Now before the Court is Defendants' Motion for Summary Judgment.[1] For the reasons set forth below, the motion will be granted in part and denied in part.

## I. BACKGROUND[2]

On the afternoon of September 19, 2004 Plaintiff was playing football with a group of acquaintances at Stewart Middle School, located in West Norriton Township, adjacent to the intersection of Forest Avenue and Oak Street. Tate was then twenty-three years old, five

---

[1] Doc. No. 20.

[2] Beyond certain basic facts, the allegations in this matter, including around material facts, are almost uniformly contested. Thus, although this Memorandum and Order does not fully adjudicate the instant case, it nevertheless will not be accompanied by "an order specifying what [material] facts . . . are not genuinely at issue," as called for under Federal Rule of Civil Procedure 56(d)(1). Fed. R. Civ. P. 56(d)(1) (2007). Furthermore, in evaluating this Summary Judgment Motion, the Court draws all inferences in the light most favorable to the non-moving party, the plaintiff, and treats his allegations as true whenever they conflict with those of Defendants and are supported by proper proofs. See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004).

feet, ten inches tall, and weighed approximately two hundred and thirty pounds.

A collision involving two automobiles occurred in or near the intersection of Forest Avenue and Oak Street while the game was being played. Plaintiff heard the crash and approached the accident site.[3] Reaching the scene, he smelled gas.[4] Plaintiff saw that the driver of one of the crashed cars, a young man, was standing by his vehicle, but that the driver of the other vehicle, a young woman named Jenne Atkins, was still inside her car.[5] Plaintiff did not know either driver personally. Atkins appeared to be going in and out of consciousness.[6] Plaintiff approached Atkins' car, opened the car door, lifted her up, and carried her from the car to a grassy lawn by the side of the road, where he placed her down.[7] Plaintiff remained near Atkins, as did a group of approximately ten other people, monitoring her condition and awaiting the arrival of emergency services personnel.[8] After approximately thirty minutes, Defendant Patrolman Delaney of the West Norriton Police Department reached the scene.[9] Plaintiff was still beside Atkins, whose condition had not noticeably changed.[10]

Patrolman Delaney first checked Atkins; she was responsive to his questions.[11]

---

[3] Tate Dep. Tr. at 27.

[4] Tate Dep. Tr. at 29, 34.

[5] Id. at 34-35.

[6] Id. at 34-37.

[7] Id. at 37.

[8] Id. at 40.

[9] Id. at 39-40.

[10] Tate Dep. Tr. at 43.

[11] Id. at 44, 47.

He then went to speak with the driver of the other crashed vehicle, who was standing near his car nearly thirty feet away from where Atkins lay.[12] As Patrolman Delaney spoke with the other driver, Plaintiff watched as Atkins' eyes closed and she stopped moving.[13] Plaintiff then yelled to Patrolman Delaney, "[s]he needs f—ing help!"[14] Patrolman Delaney immediately approached Plaintiff and ordered him to stop using profanity.[15] Plaintiff, now at a speaking volume, replied, "[w]hat, the f–k word?"[16] Patrolman Delaney then grabbed Plaintiff by the wrist, brought him alongside his police cruiser, and handcuffed Plaintiff's hands behind his back.[17] Patrolman Delaney placed Plaintiff in the back seat of the cruiser and shortly thereafter began to drive him to the West Norriton police station. The police station is within a few blocks of the accident site.

Once inside the cruiser, Plaintiff felt the handcuff tightening around his left wrist with the car's movements.[18] The double lock mechanism on the left handcuff had not been secured, enabling the handcuff to tighten when pressed. The handcuffs were behind Plaintiff's back, pressed between his body and the seat. During the short drive to the station, Plaintiff yelled no less than three times to Patrolman Delaney that the handcuffs were too tight, but Patrolman

---

[12] Id. at 42-43.

[13] Id. at 47.

[14] Id. at 46.

[15] Id. at 50.

[16] Id. at 80. Defendants contest Tate's version of what transpired just before his arrest. They claim he was repeatedly shouting profanities despite multiple directives from Patrolman Delaney to be quiet. See, e.g., Delaney Dep. Tr. at 90. Defendants also suggest that Tate's conduct was leading the group assembled at the scene to laugh and speak to Tate in an encouraging fashion. Id. at 90-92. Patrolman Delaney avers that he does not recall Tate saying anything to him in the cruiser. Id. at 155. These claims plainly are at odds with Tate's account of his conduct, which we must therefore consider as true for purposes of this Motion. See Kopec, 361 F.3d at 775.

[17] Tate Dep. Tr. at 81-83.

[18] Id. at 89.

Delaney did not respond.[19] The handcuffs were on Plaintiffs' wrists for approximately four minutes before being removed at the West Norriton police station.[20] When the handcuffs were removed, Plaintiff fell to the ground crying from the pain in his left wrist.[21] The pain in the wrist persisted, and the wrist became swollen and discolored; Tate also experienced shoulder pain.[22]

Plaintiff was charged with disorderly conduct, and issued a citation. The citation and an Incident Investigation Report created by Patrolman Delaney shortly after Tate's arrest state that the reason for the arrest and citation was Plaintiff's use of profanity, including after Patrolman Delaney ordered him to stop cursing.[23]

Plaintiff was held at the police station for approximately thirty minutes before being released. His mother and wife picked him up near the police station after his release and drove him directly to the Montgomery County Hospital Emergency Room.[24] At the hospital, Plaintiff was treated for a left wrist contusion and given a splint to support his injured wrist.[25] Plaintiff used the splint for the following two months, and also underwent physical therapy on his left wrist and shoulder during that time.[26]

Plaintiff timely filed a Complaint. It includes claims of False Arrest and

---

[19] Id. at 90-91.

[20] Id. at 88.

[21] Id. at 102, 106.

[22] Id. at 102, 124.

[23] Pl.'s Mem. Opp. Ex. A (citation) and B (report).

[24] Tate Dep. Tr. at 124-25.

[25] Pl.'s Mem. Opp. Ex. H.

[26] Id.

Excessive Force in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution against Patrolman Delaney, and a <u>Monell</u> claim against West Norriton Township, all under 42 U.S.C. § 1983, as well as state law claims of False Arrest, False Imprisonment and Excessive Force against Patrolman Delaney.[27] The Court has carefully reviewed Defendants' Motion for Summary Judgment, Plaintiff's Response, the Reply, Sur-reply, and all accompanying materials, and this matter is now ready for disposition.

## II. LEGAL STANDARD

Summary judgment should be rendered on any claim for which "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[28] Where the burden of persuasion at trial rests with the nonmovant, the movant may satisfy this standard by showing that the nonmovant's admissible evidence is incapable of carrying its burden at trial.[29] In considering a motion for summary judgment, a court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmovant, but does not make credibility determinations or weigh the evidence presented.[30]

## III. DISCUSSION

*A. Plaintiff's Section 1983 Claims*

To prevail on each claim brought under 42 U.S.C. § 1983, Tate must demonstrate

---

[27] Although Plaintiff refers to an amended complaint in his Response to Defendants' Motion for Summary Judgment, no amended complaint was filed in this matter.

[28] Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

[29] <u>Celotex</u>, 477 U.S. at 323-24.

[30] <u>See</u> <u>Goodman v. Pa. Tpk. Comm'n</u>, 293 F.3d 655, 665 (3d Cir. 2002).

that a state actor deprived him of a federally protected right.[31] Because the defendant has raised it, Tate must also demonstrate that the qualified immunity defense generally available to law enforcement officers acting in a professional capacity does not apply to bar the federal claims against Patrolman Delaney. The qualified immunity defense may shield Patrolman Delaney from liability to the extent his actions came in the line of duty and were not in violation of "clearly established statutory or constitutional rights of which a reasonable person would have known."[32]

In considering the qualified immunity defense, a district court performs a sequential analysis.[33] The first step involves a determination of whether the plaintiff has alleged the violation of a constitutional right.[34] If such an allegation appears and is properly supported, the court next determines whether the right was clearly established at the time of the alleged deprivation. A constitutional right is clearly established if its contours are so well-defined that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[35] An officer may also be entitled to the qualified immunity defense if, in violating the plaintiff's clearly established right, the officer "made a reasonable mistake about what the law requires."[36] The availability of the defense is a question of law, to be determined by the court.[37] At the summary judgment stage, a ruling that the qualified immunity defense applies is

---

[31] Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000).

[32] Id.

[33] Curley v. Clem, 298 F.3d 271, 277 (3d Cir. 2002).

[34] Id.

[35] Saucier v. Katz, 533 U.S. 194, 202 (2001).

[36] Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004).

[37] Id.

proper where a reasonable juror, viewing the facts in the light most favorable to the plaintiff, could not find that a violation of the plaintiff's clearly established constitutional rights occurred.[38]

*1. False Arrest*

There is no dispute but that Tate was arrested at the scene of the accident by Patrolman Delaney. There is a dispute as to whether Patrolman Delaney had probable cause to arrest Tate at all. The arrest was lawful only if supported by probable cause.[39]

As the Third Circuit has stated, "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."[40] When making a probable cause determination, a court looks to the totality of the circumstances confronting the arresting officer at the time of arrest.[41] The existence of probable cause in a Section 1983 action is ordinarily a question of fact for the jury,[42] although "[t]he district court may conclude in the appropriate case . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding."[43]

---

[38] Russo, 212 F.3d at 786.

[39] See Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003).

[40] Orsatti v. New Jersey State Police, 71 F.3d 480-482-83 (3d Cir. 1995).

[41] Paff v. Kaltenbach, 204 F.3d 436-37 (3d Cir. 2000).

[42] Russo, 212 F.3d at 796.

[43] Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

The first step in the Court's probable cause assessment is to consider the offense for which Plaintiff was arrested.[44] Here, Tate was arrested and issued a citation for violating the Pennsylvania disorderly conduct statute, which provides:

> A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.[45]

As a threshold matter, there is a dispute over exactly which offense or offenses provided the basis for Tate's arrest. Plaintiff posits that he was arrested for violating only subpart (3) of the statute, regarding obscene communications. For support, Tate notes that both the citation issued to him and the Incident Investigation Report created by Patrolman Delaney at the time of Tate's arrest indicate that he was charged with violating subpart (3), alone. Tate also points to his deposition testimony, in which he avers that he used profanity only twice, the second time in a calm speaking voice, but was not acting in any way unruly, before his arrest.

Defendants contend that Patrolman Delaney arrested Tate because he believed Tate was violating all four subparts of the Pennsylvania disorderly conduct statute by repeatedly hollering obscenities, thereby potentially inciting the group of bystanders at the accident scene to behave in a disruptive manner. Defendants assert that Tate's citation and Patrolman Delaney's contemporaneous report indicate otherwise simply because Patrolman Delaney believed only one type of disorderly conduct could be specified on such documents under police department

---

[44] See Johnson, 332 F.3d at 211.

[45] 18 Pa. C.S.A. § 5503(a).

administrative rules. Patrolman Delaney's deposition testimony, among other evidence, supports this position.[46] Faced with this dispute as to the factual basis for Tate's arrest, the Court must view the evidence in the light most favorable to Plaintiff, taking Plaintiff's representation as to disputed material facts as true. Accordingly, in this analysis, the Court considers whether, in the totality of the circumstances confronting Patrolman Delaney, probable cause existed to arrest Tate for violating the Pennsylvania disorderly conduct statute by twice using profanity toward the patrolman.

In order to comply with the requirements of the First Amendment to the United States Constitution, a statute which has the effect of regulating speech must be "carefully drawn or authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression."[47] An authoritative construction of a statute regulating speech by a state's courts is binding on a federal court that interprets the statute.[48]

To evaluate whether a communication is "obscene" for purposes of the Pennsylvania disorderly conduct statute, Pennsylvania courts apply the test for obscenity established by the United States Supreme Court in Miller v. California.[49] One key element of the Miller test is whether the communication at issue appeals "to the prurient interest."[50] Thus, the Pennsylvania Superior Court has held that a plaintiff's statement, "f–k you, a–hole," to a borough

---

[46] Delaney Dep. Tr. at 106.

[47] Gooding v. Wilson, 405 U.S. 518, 522 (1972); Johnson, 332 F.3d at 211.

[48] Terminiello v. City of Chicago, 337 U.S. 1, 4 (1949); Johnson, 332 F.3d at 211-12.

[49] See Commonwealth v. Bryner, 652 A.2d 909, 911-12 (Pa. Super. 1995) (citing Miller v. California, 413 U.S. 15, 24 (1973)).

[50] Miller, 413 U.S. at 24.

street department worker may have been "emphatic . . . coarse [and] disrespectful," but not obscene, because it was entirely unrelated to the subject of sex.[51]

Turning to the instant case, Tate's statements, "she needs f----ing help!" and "what, the f–k word?" made to Patrolman Delaney, are surely emphatic, coarse, and disrespectful, but they are not obscene under Section 5503(a)(3) of the Pennsylvania Code because, plainly, neither statement appeals to the prurient interest. Nothing in the evidence suggests otherwise, to even the slightest degree. Because Tate's statements were not obscene for purposes of the Pennsylvania disorderly conduct statute, those statements did not provide Patrolman Delaney with probable cause to arrest Tate for violating that statute through obscenity.

"Probable cause need only exist as to any offense that could be charged under the circumstances."[52] Accordingly, the Court will not approach the present analysis with too narrow a focus. Although evidence appears to support Plaintiff's contention that his arrest was for obscenity in violation of Section 5503(a)(3), the Court notes that, under Pennsylvania law, Tate's statements to Patrolman Delaney almost certainly would not have given rise to probable cause for his arrest for the other form of disorderly conduct most plausible under the circumstances, either – that of "tumultuous behavior" under subpart (1) of Section 5503(a).

The Pennsylvania Supreme Court has ruled that Section 5503(a)(1) is violated when a plaintiff communicates "fighting words," a narrow class of public expression not protected under the First Amendment to United States Constitution because of its inherent risk of

---

[51] Commonwealth v. Kelly, 758 A.2d 1284, 1288 (Pa. Super. 2000).

[52] Barna v. Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).

inciting violence.[53] In the case of Commonwealth v. Hock, that court held that the statement, "f–k you, a–hole," spoken in anger directly to a police officer did not constitute fighting words, and hence did not violate Section 5503(a)(1) of the Pennsylvania disorderly conduct statute or result in probable cause to arrest for disorderly conduct.[54] Tate's conduct here, viewed in the requisite manner, was less confrontational and offensive than the conduct seen in Hock. A reasonable juror thus could find that Patrolman Delaney did not have probable cause to arrest Tate for disorderly conduct. As such, summary judgment must be granted as to Tate's federal False Arrest claim unless the defense of qualified immunity applies to Patrolman Delaney.

Qualified immunity does not shield Patrolman Delaney here. It is clearly established that, to be lawful, an arrest must be supported by probable cause.[55] Again viewing the facts as Tate describes them, the Court also finds that no reasonable patrolman would have believed that Tate's two statements would give rise to probable cause to arrest Tate for disorderly conduct. Applicable Pennsylvania case law, dating to 1999 and 2000,[56] was clear, such that it would not constitute a "reasonable mistake about what [Pennsylvania] law requires"[57] to believe that Tate's two statements in late 2004 could support his lawful arrest. Patrolman Delaney's Motion for summary judgment as to Tate's false arrest claim will be denied.

---

[53] Commonwealth v. Hock, 556 Pa. 409 (1999).

[54] Id. at 418.

[55] See Russo, 212 F.3d at 786.

[56] See Hock, 556 Pa. 409 (issued in 1999); Kelly, 758 A.2d 1284 (issued in 2000).

[57] Carswell, 381 F.3d at 242.

*2. Excessive Force*

The application of excessive force during arrest violates the Fourth Amendment's protection against unreasonable seizure.[58] Where an arrest is itself unlawful, force applied in the course of the arrest is ordinarily unlawful as well.[59] Here, it already has been determined that summary judgment is improper as to Tate's false arrest claim because a jury could reasonably find Tate's arrest to have been unsupported by probable cause, and hence unlawful. It may follow that summary judgment on Tate's excessive force claim is inapt at this time, as any force used to effectuate Tate's arrest, if unlawful, would be excessive and unreasonable. However, the Court considers it proper to analyze the excessive force claim in its own right, independent of the probable cause analysis.

A court evaluates a claim of excessive force by considering the objective reasonableness of the force used, given the specific facts and circumstances confronting the officer at the time of the incident in question.[60] Certain factors should inform the evaluation, including: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officer or others; 3) whether the suspect resists arrest or flees to avoid arrest; 4) the possibility that the suspect is violent or dangerous; 5) the duration of the action; 6) whether the action occurs in the course of an arrest; 7) the possibility the suspect is armed; and 8) the

---

[58] Graham v. Connor, 490 U.S. 386, 394 (1989).

[59] See Vasquez v. Salisbury Twp. Police Dept., No. Civ. A. 98-2655 1999 WL 636662, at *9-*10 (E.D. Pa. Aug. 19, 1999) (citing Atkins v. New York City, 143 F.3d 100, 103 (2d Cir. 1998) (unlawfulness of arrest renders force used in arrest unlawful)).

[60] Graham, 490 U.S. at 397; Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003).

number of individuals with whom the officer must contend at one time.[61] Whether an action constitutes excessive force is typically a question for a jury.[62]

Tate claims that Patrolman Delaney used excessive force by failing to double lock the handcuff on his left wrist, which omission caused the injury to Tate's wrist in the course of the arrest. Tate claims this injury resulted from the handcuff on his left wrist progressively tightening as it was pressed between his body and the seat of the police cruiser while the cruiser was in motion. It is not disputed that the handcuffs used on Tate will tighten when pressed unless they are double locked, that Patrolman Delaney knew as much, and that Tate's wrists were handcuffed behind his back, including while he rode in the cruiser.[63]

Applying the eight factors listed above to this case, we note that Tate was arrested for disorderly conduct, a crime which, by its nature, ordinarily is not severe. There is no dispute but that Tate was cooperative during the course of his arrest, and did not physically resist Patrolman Delaney.[64] Defendants do not claim, and no evidence suggests, that Tate appeared to be armed with a weapon, or otherwise violent or dangerous. There is general agreement that a group of perhaps ten individuals, along with the drivers involved in the accident itself, were at the scene of Tate's arrest. In Defendants' version of the facts, Tate's profane and unruly conduct posed some risk of inciting the group gathered at the scene, but under Tate's telling, his two

---

[61] Marasco, 318 F.3d at 515.

[62] Kopec, 361 F.3d at 776-77.

[63] See Delaney Dep. Tr. at 35-36 (stating that if handcuffs are not double locked they are capable of tightening); id. at 114.

[64] See id. at 110.

brief, if profane, remarks would seem to pose a minimal risk of uproar, if any. Finally, the parties appear to agree that the handcuffs were on Tate's wrists for approximately four minutes before being removed at the West Norriton Police Department.

In Kopec v. Tate, the Third Circuit reversed summary judgment in favor of an arresting officer on a claim of excessive force where the plaintiff alleged that the officer placed handcuffs on too tightly and refused to respond to repeated requests for the handcuffs to be loosened.[65] The plaintiff told the officer he was in severe pain, and at one point fainted and fell to the ground in pain, but only after they had been on for ten minutes did the officer remove the handcuffs from the plaintiff's wrists. The plaintiff alleged permanent nerve damage to his wrists as a result.[66] The Third Circuit emphasized the fact-driven nature of the decision, and warned that it "should not be overread" to permit "a torrent of handcuff claims."[67]

The instant facts are perhaps not as egregious as those seen in Kopec, but they come close enough to be governed by the rule of that case. In Kopec, over ten minutes, the plaintiff repeatedly told the officer the handcuffs were too tight and causing him severe pain; here, over four minutes, Tate told Patrolman Delaney at least three times that the handcuffs were too tight. Tate may not have spoken the words, "I am in pain," but it is more than reasonable to impute to a police officer the knowledge that overly tight handcuffs inevitably cause the wearer significant pain. In Kopec, the plaintiff groaned, fainted and fell to the ground in pain from the tight handcuffs; here, Tate cried and fell to the ground when Patrolman Delaney removed the

---

[65] Kopec, 361 F.3d at 776-77.

[66] Id.

[67] Id.

handcuffs from his wrists. The Kopec plaintiff alleged permanent nerve damage; here, Tate's wrist became swollen and discolored, he was rushed to the hospital where he was diagnosed with a contusion, and his wrist was fitted with a splint which he wore for two months. In view of Kopec, the facts and circumstances viewed in the requisite light would permit a jury to find objective unreasonableness on the part of Patrolman Delaney in failing to promptly relieve the excessively tight handcuffs on Tate. Thus, summary judgment on this claim is inapt unless the qualified immunity defense applies.

Qualified immunity is not available to Patrolman Delaney as to this claim. Individuals have a constitutional right to be free from excessive force during arrest,[68] which Tate has here alleged. That general right includes the more particularized right not to be locked into excessively tight handcuffs after repeatedly notifying a police officer of the situation.[69] Moreover, the Third Circuit in Kopec held that the latter right was clearly established since at least the year 2000, the year in which the events of that case took place.[70] The same holds with respect to the nearly identical right at issue here. Also, because no evidence supports such a ruling, and because of the clear statement of law expressed in Kopec, the Court cannot find that Patrolman Delaney made a reasonable mistake about what the law requires. Summary judgment will be denied on this claim.

---

[68] See Graham, 490 U.S. at 394.

[69] See Kopec, 361 F.3d at 776-77.

[70] Id.

### 3. *Monell* Claim - Failure to Train

Defendant West Norriton Township moves for summary judgment on Plaintiff's claim that it failed to train Patrolman Delaney, and thereby caused Tate's injuries. A municipality cannot be held liable under Section 1983 on a vicarious liability theory.[71] It "can be found liable under section 1983 only where the municipality *itself* causes the constitutional violation at issue."[72] It is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983."[73] It is well settled that a government can be liable for failing to adequately train or supervise an employee who acts under color of law in an unconstitutional fashion.[74] However, to establish such liability, a plaintiff must "identify a municipal policy or custom" that was the "moving force" behind the injury, which may be accomplished by demonstrating a direct causal link between the policy or custom and the violation.[75] The plaintiff's burden is rigorous – "plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact."[76]

Here, Plaintiff has failed to produce evidence that could support his claim of a

---

[71] See Monell v. N. Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978); Carswell, 381 F.3d at 244.

[72] Carswell, 381 F.3d at 244 (citation omitted).

[73] Monell, 436 U.S. at 694.

[74] See Canton v. Harris, 489 U.S. 378, 380 (1989).

[75] Id. at 385, 399, 403-404.

[76] Carswell, 381 F.3d at 244.

West Norriton Township policy or custom that relates to either of the constitutional violations he alleges. Plaintiff implausibly stretches certain statements of Patrolman Delaney in an unavailing effort to satisfy his burden to show a "policy or custom," but offers no other evidence on the question. While Plaintiff's counsel argues in his brief that he attempted to discover Township policies through discovery requests which were ignored, no timely motion to compel was ever filed, and the time has long since passed for seeking relief from the Court for such a claim. The Court's determination at summary judgment must be based on proper proofs, and Plaintiff's counsel's explanation does not compensate for the lack of evidence of Township policy or custom in connection with his claims. Accordingly, Defendants' Motion for summary judgment as to Monell liability will be granted.

### B. State Law Claims

Patrolman Delaney moves for summary judgment on Tate's claims against him for False Arrest, False Imprisonment, and Assault and Battery under state law. Because genuine disputes of material fact exist as to each of these claims, as seen in the analysis set forth above, Patrolman Delaney's Motion, in this respect, will be denied.

A jury finding of excessive force during arrest can support liability for Assault and Battery in a police officer.[77] We have seen that the question of excessive force in this case involves disputes of material fact, and these preclude summary judgment here. Similarly, disputes of material fact surround the question whether probable cause existed for Tate's arrest, such that summary judgment on his False Arrest and False Imprisonment claims must be denied.

---

[77] See Renk v. City of Pittsburgh, 537 Pa. 68 (Pa. 1994).

## III. CONCLUSION

For all the reasons stated above, summary judgment will be granted as to Tate's claim against West Norriton Township, but denied in all respects as to Patrolman Delaney. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONTE TATE, <br>     Plaintiff, <br> v. <br><br> WEST NORRITON TOWNSHIP, et al., <br>     Defendants. | CIVIL NO. 06-CV-4068 |

### ORDER

AND NOW, this 31st day of March 2008, upon consideration of Defendants' Motion for Summary Judgment [Doc. No. 20], Plaintiff's Response [Doc No. 22], Defendants' Reply [Doc. No. 24] and Plaintiff's Sur-reply [Doc. No. 26], it is **ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. Defendants' Motion is **GRANTED** as to Plaintiff's claim against West Norriton Township. Accordingly, Count **Three** of the Complaint is Dismissed;

2. In all other respects, Defendants' Motion is **DENIED**.

It is so **ORDERED**.

BY THE COURT:

CYNTHIA M. RUFE, J.